# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **William F. Kenney** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| **v.** | )    **Civil Action No. 07-1989 (PLF)** |
|  | ) |
| **U.S. Department of Justice** | ) |
|  | ) |
| **Defendant.** | ) |

_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT
DEPARTMENT OF JUSTICE'S MOTION FOR PARTIAL SUMMARY
JUDGMENT, AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
<u>FOR PARTIAL SUMMARY JUDGEMENT</u>**

Paul Wolf
P.O. Box 11244
Washington, D.C. 20008-1244
Phone: (202) 674-9653
Fax: (202) 364-6188

*Attorney for William Kenney*

August 25, 2008

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES …………………………………………………… *iv*

STATEMENT OF FACTS ……………………………………………….……… 1

SUMMARY OF ARGUMENT ………………………................................ 3

STANDARD OF REVIEW ……………………………………………….…….. 4

ARGUMENT …………………………………………………………….……… 5

I.    PLAINTIFF IS ENTITLED TO PARTIAL SUMMARY JUDGMENT
      BECAUSE DEFENDANT HAS WRONGLY WITHHELD RESPONSIVE
      RECORDS. ............................................................................................ 5

      A.    Defendant has wrongfully withheld records held by the EOUSA. ..... 5

      B.    Defendant has wrongfully withheld records held by the FBI. ............ 8

II.   DEFENDANT IS NOT ENTITLED TO PARTIAL SUMMARY
      JUDGMENT. .................................................................................... 9

      A.    There is a genuine issue of fact in dispute: whether Richard
            Ferguson's signature was forged, or whether he changed his
            mind about signing after being contacted by the FBI. ...................... 9

      B.    Defendant should have the ability to compare the Privacy
            Waiver signed by Mr. Ferguson with other instances of Mr.
            Ferguson's signature it should have in its possession. ………........... 10

      C.    Defendant is judicially estopped from arguing inconsistent
            positions on the the validity of the privacy waivers submitted. ......... 12

III.  PLAINTIFF HAS A RIGHT TO THE RECORDS AT ISSUE IN
      THIS CASE, INDEPENDENTLY REVIEWABLE UNDER THE
      ADMINISTRATIVE PROCEDURE ACT. .................................................. 13

      A.    Defendant's witholding of <u>Brady</u> material violates Plaintiff's
            Constitutional rights under the Fifth and Sixth Amendments............ 14

IV.   PLAINTIFF HAS THE LEGAL RIGHT TO OBTAIN THE RECORDS
      HE SEEKS ON COMPACT DISCS, AT MINIMAL COST ....................... 16

      A.    The electronic FOIA amendments of 1997 require the Defendant

to provide the requested information on compact discs. .................. 16

B.    It's in the public interest that defendants in criminal cases receive
fair trials. ........................................................................................ 17

CONCLUSION ...................................................................................................... 18

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bates v. Long Island R.R. Co.*,
  997 F.2d 1028 (2nd Cir. 1993) ........................................................................  12

* *Brady v. Maryland*,
  373 U.S. 83 (1963) ............................................................................2, 9, 13-15

* *Campbell v. United States Dep't of Justice*,
  164 F.3d 20 (D.C.Cir.1998) ..........................................................................  5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................. 5, 10

*Chambers v. Mississippi*,
  410 U.S. 284 (1973) ......................................................................................  15

*Chaveriat v. Williams Pipe Line Co.*,
  11 F.3d 1420 (7th Cir. 1993) ........................................................................  12

* *Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ......................................................................................  10

*Consumers Union v. Board of Governors of the Federal Reserve System*,
  410 F.Supp. 63 (D.D.C. 1976) ......................................................................  18

*Cox v. DOJ*,
  576 F.2d 1302 (8th Cir. 1978) ......................................................................  15

*Cuneo v. Rumsfeld*,
  553 F.2d 1360 (D.C.Cir. 1977) ....................................................................  17

*Giglio v. United States*,
  405 U.S. 150 (1972) .................................................................................. 7, 15

*Goland v. CIA*,
  607 F.2d 339 (D.C.Cir.1978) ........................................................................  5

*In re Oliver*,
  333 U.S. 257 (1948) ......................................................................................  15

* *Lesar v. DOJ*,
  636 F.2d 472 (D.C. Cir. 1980) ......................................................................  16

\* *Marschner v. Department of State,*
    470 F.Supp. 196 (D.C.Conn. 1979) ............................................... 17

*McKinnon v. Blue Cross & Blue Shield of Ala.,*
    935 F.2d 1187 (11th Cir. 1991) ................................................... 12

*Napue v. Illinois,*
    360 U.S. 264 (1959) .................................................................. 15

\* *PHE, Inc. v. Department of Justice,*
    983 F.2d 248 (D.C.Cir.1993) ........................................................ 5

\* *United States v. Bagley,*
    473 U.S. 667 (1985) .............................................................. 14-15

*United States  v. McCaskey,*
    9 F.3d 368 (5th Cir. 1993) .......................................................... 12

*United States v. Melchor Moreno,*
    536 F.2d 1042 (5th Cir. 1976) ...................................................... 15

\* *Vaughn v. Rosen,*
    484 F.2d 820 (D.C.Cir. 1973) ............................................... 3, 5, 6, 8

*Washington v. Texas,*
    388 U.S. 14 (1967) ................................................................... 15

*Webb v. Texas,*
    409 U.S. 95 (1972) ................................................................... 15

## FEDERAL STATUTES

5 U.S.C. § 552 (Freedom of Information Act) ................................. 5, 8, 14-17

5 U.S.C. §§ 551 et seq (Administrative Procedure Act) ............................ 13

## RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 56(c) .................................................................. 5

Fed. R. Civ. P. 56(f) ............................................................... 11, 13

**OTHER**

Fifth Amendment to U.S. Constitution ...................................................... 14

Sixth Amendment to U.S. Constitution ...................................................... 14

H.R. Rep. No. 1497, 89th Cong., 2d Sess. 1 (1966) .................................... 5

S.Rep.No. 813, 89th Cong., 1st Sess., 8 (1965) ......................................... 5

## STATEMENT OF FACTS

The Plaintiff in this case is an indigent prisoner who has spent the last twelve years trying to use the Freedom of Information Act ("FOIA") to obtain records from the Department of Justice, which he believes were wrongfully withheld from him in discovery during his prosecution, and which he believes may contain exculpatory evidence. He submitted separate FOIA requests to the Executive Office for U.S. Attorneys ("EOUSA"), which is the Federal prosecutors' office, and to the Federal Bureau of Investigation ("FBI"), which did investigative work leading to his prosecution. Both are components of the Department of Justice, which is the Defendant in this lawsuit. Plaintiff's FOIA request was framed as a request for all records pertaining to the prosecution of his case.[1]

During these twelve years, much correspondence passed between the Plaintiff and these offices. The Plaintiff submitted 19 privacy waivers, using a form designed and required by the Department of Justice, so the Defendant would not apply the FOIA exemptions for personal privacy to documents mentioning these 19 individuals. See Exhibit 2 to Complaint. Each time he did so, the FBI and EOUSA treated these as new and separate FOIA requests, turning two administrative records into about forty and further complicating the paper trail.[2] When the Plaintiff was advised he would be charged significant copying fees for things like trial and hearing transcripts, pleadings,

---

[1] At times, the Plaintiff has tried to itemize what kinds of records might pertain to his case. These are leads and information Plaintiff supplied to assist the DOJ in its search for records, and can also be interpreted as the Plaintiff's view of examples of records within the scope of his request.

[2] The Defendant refer to these privacy waivers as "third party requests." See Defendant's Motion for Partial Summary Judgment at 15.

Westlaw printouts of cases used by the prosecutors, and the like, he "narrowed" his request to exclude them.[3]

During this ten year period, the Plaintiff appealed numerous adverse determinations by the DOJ, including all of its initial determinations, with the exception of the fee waiver denial. The parties' communications are difficult to follow, and neither has the complete administrative record. However, the case is greatly simplified if the Court considers that the Plaintiff preserved his right of access to these records at the outset, and spent the next twelve years trying to negotiate photocopying fees. With respect to the EOUSA, he has exhausted his administrative remedies, since the EOUSA finally decided not to release any records at all.

*The scope of Plaintiff's FOIA request.*

The Plaintiff is trying to use the FOIA to obtain Brady materials. He is seeking the records of the Federal prosecutor's office and of the FBI. These may contain records originating from New Hampshire FBI field offices and resident agencies, the New Hampshire State Police, and local police authorities. Plaintiff believes that these two components of the DOJ, the EOUSA and the FBI, should each have a master file pertaining to his case, which may contain sub-files.[4] Plaintiff is seeking the release of the records in these files, and that segregable portions of records withheld based on FOIA

---

[3] Over the years, the parties have had lengthy negotiations over copying fees, and at various times, the Plaintiff has proposed ways to reduce the DOJ's fees by eliminating certain types of records from his request.

[4] For example, FBI Central Records system numbers contain three parts. A number for the class or category of crime, the case number, and a sequential serial number for each record. In cases with co-defendants, the case number is extended by a hyphen and a letter designating separate sub-files for each defendant. (e.g., 12345-A would be the subfile for the first co-defendant in case number 12345) Each record in these files is assigned a serial number. Gaps in serial numbers indicate missing records. For the FBI records, Plaintiff seeks every serial-numbered record from every subfile of the case file pertaining to his prosecution. Plaintiff's counsel does not know how EOUSA records are organized.

exemptions be released.  He also asks that the privacy waivers he submitted be applied, so that the FOIA exemptions for personal privacy, (b)(6) and (b)(7)(C), are not applied with respect to those individuals.  Plaintiff has also requested a <u>Vaughn</u> index, which is a list of each document located by the Defendant, with a reason given for every instance in which a FOIA exemption was applied.  <u>See</u> Complaint at 13, ¶ 69.

In response to this litigation, the FBI has taken the position that it lost its "working file," and is now re-processing documents already released to the Plaintiff in order to respond to this litigation.[5]  The FBI had previously honored all but one of the privacy waivers Plaintiff submitted - the waiver of Tanya Ferguson - and did not apply FOIA privacy exemptions for any of the other waivers that Plaintiff submitted.  The EOUSA, another component office of the same Defendant agency, takes a different legal position, denying the validity of all waivers, and also denying that it has any responsive records other than what it has already referred to the FBI for processing.  The Defendant in this case is the Department of Justice itself.

### SUMMARY OF ARGUMENT

The Defendant's motion for partial summary judgment should be denied because the Defendant has identified, but not released, at least 27 boxes of records under the control of the EOUSA which are responsive to Plaintiff's request and which it has not released.  Defendant has not argued in its brief the legal standards for any applicable FOIA exemptions, but instead presents an affidavit of an employee of the EOUSA who claims, without stating a basis in her personal knowledge, that a signature on one of

---

[5] Plaintiff does not know what an FBI "working file" is, or what chain of custody may exist within the FBI for tracking documents released under the FOIA.  Plaintiff also does not understand the logic of reprocessing his request before any substantive legal issues, such as issues relating to privacy waivers will be applied, have been litigated.

Plaintiff's nineteen privacy waivers was forged.  At most, this presents a material fact in dispute as to this one privacy waiver, which was, incidentally, previously honored by the Defendant when the FBI processed his request.

Plaintiff should be granted his cross-motion for partial summary judgment because he has shown that responsive records have not been released, and the burden is on the agency to justify its withholdings. At most, the Defendant has challenged one privacy waiver out of nineteen, but this does not create a blanket exemption to use for all 27 boxes of documents. The FOIA requires that all segregable portions of these documents be released.  Secondly, Defendant has not substantively responded to Plaintiff's separate FOIA request of April 22, 2004 for records relating to the FBI's contacting individuals about their privacy waivers, and does not address this FOIA request in its brief.

Although the FOIA provides the same rights to everyone, Plaintiff deserves extra consideration because he is an incarcerated prisoner.  The public has an interest in such persons receiving fair trials, and Plaintiff is only asking for what he was entitled to receive at trial.  The APA has a provision providing for judicial review of agency action "contrary to constitutional right" which provides an independent basis for review. Finally, Plaintiff is entitled to waiver of all fees, and the Defendant should provide all records to him on compact discs, for which the copying cost should be minimal.

## STANDARD OF REVIEW

Summary judgment is warranted when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ.

4

P. 56(c). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## ARGUMENT

### I.    Plaintiff is entitled to Partial Summary Judgment because Defendant has wrongly withheld responsive records.

#### A.    Defendant has wrongfully withheld records held by the EOUSA.

Under the FOIA, an agency bears the burden to justify the withholding of records. 5 U.S.C.A. § 552(b); PHE, Inc. v. Department of Justice, 983 F.2d 248, 250 (D.C.Cir. 1993); S.Rep.No. 813, 89th Cong., 1st Sess., 8 (1965); H.R. Rep. No. 1497, 89th Cong., 2d Sess. 1 (1966).  By placing the burden of proof on the agency to justify its withholdings, Congress explicitly rejected the court's traditional deference to administrative agency determinations under the APA, which it termed "meaningless judicial sanctioning of agency discretion."  S.Rep.No. 813, 89th Cong., 1st Sess., 8 (1965); H.R. Rep. No. 1497, 89th Cong., 2d Sess. 1 (1966).

The agency may meet this burden by submitting detailed affidavits showing that the requested records logically fall within the claimed exemptions.  Campbell v. United States Dep't of Justice, 164 F.3d 20, 30 (D.C.Cir.1998), as amended (1999)  The agency must prove "that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from FOIA inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C.Cir.1978)  Contrary to Defendant's view, Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir. 1973) stands for the proposition that generalized affidavits do not provide a sufficiently detailed description of an agency's withholdings.  "[C]ourts will simply no longer accept (from the defendant agency) conclusory and generalized

allegations of exemptions ... but will require a relatively detailed analysis (of the contents of documents the agency seeks to withhold)  in manageable segments." <u>Vaughn v. Rosen</u>, 484 F.2d at 826.

The EOUSA has located 27 boxes of records pertaining to the Plaintiff's prosecution. <u>See</u> Finnegan Declaration at ¶ 46.  These boxes contain separate pleadings and correspondence subfiles associated with each defendant in the criminal case. <u>Id</u>. "Investigative" material  - as this term is used by the Defendant - is scattered throughout all of the subfiles. <u>Id</u>.

The EOUSA has not released, and has no intention of releasing any records to Plaintiff.  Defendant cites no FOIA exemption or case law to support this position. Instead, Defendant contends that Plaintiff is only entitled to FBI records contained in these files, because during his twelve years of negotiating with the EOUSA, in one letter he "narrowed" his request to "investigative" records.[6] <u>See</u> Defendant's Motion for Partial Summary Judgment at 11.  The Defendant avers that the word "investigative" refers to FBI records, and by referring FBI records back to the FBI, the EOUSA has met its burden under the FOIA.

The EOUSA has also tried to construe Plaintiff's FOIA request as a request for records about himself, when clearly the subject of his request all along has been for records about his case, which pertain to all Defendants. <u>See</u> Exhibit A to Complaint. What the  EOUSA has apparently done has been to take the Kenney subfile of the main case file, and subfiles for four deceased individuals, identify FBI records in them, and

---

[6] In the same letter, however, Plaintiff asked EOUSA for a quotation for copying fees for "publicly-filed" records, indicating that Plaintiff's use of the term "investigative", as he understood it, was to distinguish these records from the public docket of the case. <u>Id</u>.

refer those records back to FBI for processing. The EOUSA then argues that it has fulfilled its obligations under the FOIA.[7]

Plaintiff is entitled to the release of all 27 boxes of records, and any other materials pertaining to the case, after the DOJ properly applies the FOIA exemptions to them. Plaintiff also disagrees with Defendant's characterization of the term "investigative" to limit his request to records originating with the FBI. Other kinds of records of interest to Plaintiff, which might not be in the FBI's files, include Pre-Sentence Reports,[8] prior statements of the Plaintiff, witness statements and interview notes, Giglio information (including criminal records of, and promises made to witnesses), cooperation and plea agreements, including the informant files of witnesses who agreed to cooperate with prosecution trial subpoenas, the results of criminal background checks, tangible objects (such as video and audio surveillance tapes), photographs, Department of Motor Vehicle records, forensic test results (such as fingerprint and handwriting analysis), search warrants, hand-written notes of grand jury and trial testimony, press releases and press clippings, probation office correspondence, and United States Attorney's Office administrative forms. All of these kinds of records are discoverable in a criminal case and should be releasable, with redactions, under the FOIA.[9] These are also, more or less, the same categories of records itemized in Plaintiff's initial FOIA request to EOUSA.

---

[7] Of the 15 privacy waivers obtained by Plaintiff, the EOUSA has an issue with only one of them - the waiver signed by Richard Ferguson. If four of the 15 people could not be located for re-confirmation, that leaves ten of them who wrote back to the FBI re-confirming their desire to waive their privacy rights for the Plaintiff. (the remaining four individuals are not dead, for a total of 19) It is also noteworthy that while the EOUSA disputes the validity of the signature of Richard Ferguson, the FBI has already honored his signature. The FBI did not honor the signature of Tanya Ferguson, whom EOUSA has apparently contacted and who has now apparently validated the privacy waiver that the FBI previously denied.

[8] If there is an issue of prison regulations prohibiting any of these materials inside the prison, particular documents could be released to Plaintiff's counsel.

[9] Unlike discovery, there is no equivalent of a protective order in the FOIA. FOIA redactions are used to keep sensitive information from becoming public.

Plaintiff has requested a <u>Vaughn</u> index and will make a separate motion for a <u>Vaughn</u> index if Defendant does not voluntarily produce one.

**B.     Defendant has wrongfully withheld records held by the FBI.**

After receiving redacted records from the FBI, Plaintiff appealed the FBI's applications of the FOIA exemptions at various stages. <u>See</u> Complaint at ¶¶ 48, 53, 54, 58, 59, 61. He exhausted his administrative remedies. Then on April 22, 2004, Plaintiff submitted a separate FOIA request to the FBI for records pertaining to its contacts with six of his witnesses who had signed privacy waivers. <u>See</u> Complaint at ¶ 64. The FBI did not substantively reply to this request.

Defendant claims to have lost its "working file" with regard to the FBI's processing of his FOIA requests and appeals, and asked Plaintiff for six additional months to re-create it for use in this litigation. Plaintiff has agreed to give the Defendant the six months it requests, but does not understand the logic of re-processing Plaintiff's request when there appears to be no agreement on which privacy waivers the FBI should apply. It would seem to be a waste of effort on the FBI's part, since the FBI may ultimately have to process these records a third time if the Court agrees with Plaintiff's arguments that all of the privacy waivers he submitted should be honored.

While the Plaintiff has agreed to this six month extension, the Court can still rule on one issue in Plaintiff's Cross-Motion for Partial Summary Judgment that pertains to the FBI. That is, on April 22, 2004, Plaintiff submitted a FOIA request to the FBI for records pertaining to its contacts with six of his witnesses who had signed privacy waivers. <u>See</u> Complaint at ¶ 64. The FBI has never replied, even though the FOIA contains a statutory 20 day period to reply. 5 U.S.C. 552(a)(6)(A)(i). The Court can

decide this issue independently of Plaintiff's FOIA request for <u>Brady</u> materials which the FBI is currently reprocessing.  This FOIA request is an attempt by Plaintiff to avoid having to request discovery on this issue.  When the FBI finishes reprocessing Plaintiff's original FOIA request, and moves for Summary Judgment, Plaintiff can also cross-move for Summary Judgment on those issues.

## II.     The Defendant is not entitled to Partial Summary Judgment.

### A.     There is a genuine issue of fact in dispute: whether Richard Ferguson's signature was forged, or whether he changed his mind about signing after being contacted by the FBI.

In ¶ 58 of her affidavit, Karen Finnegan states that "the Justice Department's Criminal Division advised EOUSA that Mr. Ferguson had informed a Criminal Division representative that he never authorized Plaintiff to have access to his records.  <u>See</u> Exhibit Z."  Exhibit Z itself states that:

> "This is to advise you that based on valid informatiom, we are denying your request for records on Mr. Richard Ferguson. Law enforcement sources have informed us that the Privacy Act waiver you submitted on behalf of Mr. Ferguson is not valid and therefore, your request for records on Mr. Ferguson is denied in full."

Exhibit Z to Defendant's Motion for Partial Summary Judgment.  This is despite the fact that the FBI itself had honored Mr. Ferguson's privacy waiver in its processing of Plaintiff's FOIA request.   Additionally, Ms. Finnegan's affidavit is double hearsay because she does not have personal knowledge, or even name the person who repeated what Mr. Ferguson allegedly said.  On this basis, the Court is asked to uphold the Defendant agency's action in denying all privacy waivers - even those it had confirmed

by telephone, not once, but twice.[10]   Richard Ferguson's signature on the privacy waiver submitted to the Court, alone, should be sufficient to defeat Defendant's Motion for Partial Summary Judgment.  See Exhibit 2 to Complaint at 6.

After accusing the Plaintiff of misleading, intimidating, and manipulating his own witnesses, see Defendant's Motion for Summary Judgment at 18, the Defendant goes on to admit that "[i]n light of these facts EOUSA concluded that there was significant uncertainty as to whether these individuals gave their authorization to release their law enforcement information to Plaintiff freely.  Consequently EOUSA decided to err on the side of caution ..."  Id at 19.  Surely this "significant uncertainty" cannot be the basis to prevail in Summary Judgment.  The burden is on the movant to establish the absence of a material fact in dispute.  Celotex Corp. v. Catrett, 477 U.S. at 323. The Defendant has not met this burden.

> **B.**     **Defendant should have the ability to compare the Privacy Waiver signed by Mr. Ferguson with other instances of Mr. Ferguson's signature it should have in its possession.**

The original copy of Mr. Ferguson's Privacy waiver was sent to the Defendant on about March 12, 2000.  A copy which appears to bear Mr. Ferguson's signature may be found in Exhibit 2 to the Complaint at 6.  Mr. Ferguson was a co-defendant in the Flynn case who became cooperating government witness and testified against the Plaintiff.  The Defendant should have a copy of Mr Ferguson's cooperation agreement, or of his plea agreement, which bears his signature.  Defendant may have other documents which bear

---

[10] Plaintiff presumes that the FBI and EOUSA have similar policies regarding confirmation of privacy waivers, and that the FBI has previously contacted these individuals to confirm the waivers.  It is also noteworthy that these are policies, not laws or regulations, and there is "law to apply" because the FOIA requires agencies to release records subject to narrowly construed exemptions.  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971).

Mr. Ferguson's signature as well.  Plaintiff understands that Mr. Ferguson is now in the Witness Security Program.

If the Defendant will not come forward with these signature examplars, the Court should permit discovery of them and compare the signatures itself.  This could show whether the Defendant's serious accusation that the Plaintiff has committed fraud is borne out by the evidence it has.  Plaintiff cannot locate any copy of Mr. Ferguson's signature on any document in the trial record.  Plaintiff has been in a maximum security prison for more than ten years and would have no way to forge Mr. Ferguson's signature because he has never seen it, aside from what is on the Privacy Waiver he received from Mr. Ferguson.

A second way to corroborate this evidence is by discovery of FBI Witness Security Program mail records.  Plaintiff believes that the address given for Mr. Ferguson on his privacy waiver, Room 524, 320 First Street NW, Washington DC is a mail forwarding address for the Witness Security Program.  It is only a few blocks away from this courthouse.  If mail records show correspondence between the Plaintiff and Mr. Ferguson, this would tend to show that Mr. Ferguson's signature is indeed authentic, and the Defendant has falsely accused the Plaintiff of forgery.  Again, if the Defendant comes forward with a statement about whether the Witness Security Program keeps track of mail sent to and from people in the program, Plaintiff can avoid filing a separate motion for discovery under Rule 56(f).  Plaintiff is not asking in the instant motion for the case to be referred to a Magistrate.  It would be far simpler for the Defendant to come forward with this information in an affidavit attached to its response to this pleading.  Of course,

if any of this must remain sealed to protect confidential information, the Court can review the Defendant's affidavits <u>in camera</u>.

**C.    Defendant is judicially estopped from arguing inconsistent positions on the the validity of the privacy waivers submitted**

The doctrine of judicial estoppel precludes a party from asserting a legal or factual position that contradicts or is inconsistent with a prior position taken by the same party.  <u>See</u> <u>Bates v. Long Island R.R. Co.</u>, 997 F.2d 1028, 1037 (2nd Cir. 1993); <u>U.S. v. McCaskey</u>, 9 F.3d 368, 378 (5th Cir. 1993); <u>Chaveriat v. Williams Pipe Line Co.</u>, 11 F.3d 1420, 1427 (7th Cir. 1993); <u>McKinnon v. Blue Cross & Blue Shield of Ala.</u>. 935 F.2d 1187, 1192 (11th Cir. 1991).

The FBI has already processed Plaintiff's FOIA request, and honored all privacy waivers except for the waiver of Tanya Ferguson.  The FBI honored the waiver of Richard Ferguson.  Now the EOUSA claims there is a problem with Richard Ferguson's signature, and will not honor any of the privacy waivers at all.  Apparently there is no longer a problem with Ms. Ferguson's signature.  According to the Defendant, it is the EOUSA's normal procedure to contact people signing privacy waivers for confirmation.  Here, the Defendant argues that it must <u>re-confirm</u> all privacy waivers, and it has even done so.  It has successfully contacted most of these individuals twice now, and most of them have now consented twice.

The position advocated by the EOUSA raises many questions about the FBI's processing of Plaintiff's FOIA request.   Did the FBI previously contact Richard Ferguson?  If so, did Mr. Ferguson authorize the release of information about him?  If not, why did the FBI release it?  Or do the FBI and EOUSA have different policies about

confirming the validity of privacy waivers?  Again, the Defendant should come forward with this information to avoid a request for discovery under Rule 56(f).  Otherwise, the FBI's prior efforts to confirm these privacy waivers raise material issues of fact in dispute. Key is whether Richard Ferguson changed his position, and whether the Defendant has a basis to accuse the Plaintiff of forgery in the instant litigation.

It is not possible, and should not be permitted, for these two components of the DOJ to take different legal positions when the DOJ is the only Defendant in this case. The legal position of the EOUSA is irrelevant because the EOUSA is not being sued. The FBI and EOUSA are not separate parties in this lawsuit, and the DOJ cannot assert contradictory legal positions at the same time.  That is judicially estopped.  Viewed in this light, it may be that the FBI's re-processing of Plaintiff's FOIA request is an attempt to reconcile the DOJ's position with respect to FBI documents to make it consistent with the one now taken by the EOUSA.  This is why it is so important for the Defendant to be forthcoming about the FBI's processing of Plaintiff's FOIA request. Otherwise the Plaintiff will need to undertake discovery of the FBI's first processing of his request, to determine how the working file could have been lost.

### III.     PLAINTIFF HAS A RIGHT TO THE RECORDS AT ISSUE IN THIS CASE, WHICH IS INDEPENDENTLY REVIEWABLE UNDER THE ADMINISTRATIVE PROCEDURE ACT.

Plaintiff brings this action not only under the Freedom of Information Act, but also under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et. seq. See Complaint at ¶ 74.  Section 706 (1)(B) of the APA provides the Court with jurisdiction to review agency action "contrary to constitutional right."  The Plaintiff has brought this suit because he believes he was denied Brady material in his criminal

prosecution. This brings the Fifth and Sixth Amendments of the Constitution into play. It is noteworthy that the Freedom of Information Act is codified within the text of the APA, beginning at 5 U.S.C. § 552. The FOIA itself is an administrative procedure. Plaintiff has standing under the APA because he has exhausted his administrative remedies under the FOIA.

### A. Defendant's witholding of Brady material violates Plaintiff's Constitutional rights under the Fifth and Sixth Amendments.

The right to the production of all evidence at a criminal trial has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." The Fifth Amendment guarantees that no person shall be deprived of liberty without due process of law. It is the duty of the courts to vindicate the guarantees of confrontation and due process, and to accomplish that, it is essential that all relevant and admissible evidence be produced.

The Plaintiff is seeking documents that should have been produced and made available to him at his criminal trial under Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." Brady, 373 U.S. at 87.

In United States v. Bagley, 473 U.S. 667 (1985), Justice Blackmun, writing for the Court, reviewed the Supreme Court cases dealing with a prosecutor's failure to disclose evidence that could have been used effectively to impeach important government witnesses. He held that impeachment evidence, as well as exculpatory evidence, falls

within the Brady rule. Bagley, 473 U.S. at 675; Giglio v. United States, 405 U.S. 150, 154 (1972). Such evidence is "evidence favorable to an accused" ... "so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." Id. Cf. Napue v. Illinois, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend").

Few rights are more fundamental than that of an accused person to present evidence in his own defense. Chambers v. Mississippi, 410 U.S. 284, 302 (1973); Webb v. Texas, 409 U.S. 95 (1972); Washington v. Texas, 388 U.S. 14, 19 (1967); In re Oliver, 333 U.S. 257 (1948). Where the trial court excludes relevant evidence without sufficient justification, the defendant's constitutional right to compulsory process is violated. See United States v. Melchor Moreno, 536 F.2d 1042, 1045-46 (5th Cir. 1976).

In an attempt to prejudice the Plaintiff, Defendant emphasizes the crimes for which the Plaintiff was convicted. They were robberies. Defendant even includes the details as the first two points of its Statement of Facts Not Genuinely in Dispute, as if they were a basis to deny Plaintiff access to the records. But it is immaterial who the Plaintiff is. "[A]ny person may make a FOIA request." 5 U.S.C. § 552(a)(3); Cox v. DOJ, 576 F.2d 1302, 1305 n. 5 (8th Cir. 1978) (plaintiff was a federal prison inmate).

The privacy exemptions to the FOIA require the court to balance various public and private interest factors, even in the absence of privacy waivers. The Defendant hasn't argued any factors to support a position of withholding records on the basis of personal privacy. The burden is on the Defendant to argue that the (b)(7) exemption to the FOIA

15

should apply to these records, and the Defendant hasn't cited a single exemption (b)(7) case.  See, e.g., Lesar v. DOJ, 636 F.2d 472, 486 (D.C. Cir. 1980) (exemption (b)(7)(C) ordinarily involves a balancing of the public interest in disclosure against the degree of the invasion of privacy which would result from the disclosure)  Defendant hasn't cited any law in support of its application of any FOIA exemption, and for this reason, the Court should deny Defendant's Motion for Partial Summary Judgment.

The fact that this ligitation relates to a criminal prosecution means that Plaintiff's need for access to these records is more, not less, compelling than in other kinds of FOIA cases.  Plaintiff's freedom may depend on his access to these records.  While this may not be a factor to consider under the FOIA, it is a factor to consider in Plaintiff's APA claim.

## IV.    PLAINTIFF HAS THE LEGAL RIGHT TO OBTAIN THE RECORDS HE SEEKS ON COMPACT DISCS, AT MINIMAL COST.

### A.    The electronic FOIA amendments of 1997 require the Defendant to provide the requested information on compact discs.

In all these years of administrative proceedings, the Defendant never once admitted to Plaintiff that he was entitled to receive the records he requested on compact disc, thus avoiding endless negotiating over copying fees.  The Court should view Plaintiff's "narrowing" of his request in this light.  When an agency produces documents, the agency "shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."  5 U.S.C. § 552(a)(3)(B).  Plaintiff's counsel has experience in litigating other FOIA cases against the FBI, and his experience has been that the FBI first scans paper records, and then applies its redactions using computer software.  If this is the case, after they are redacted, the records should be "readily reproducible" on compact discs, which cost about one dollar

16

each.  Admittedly, Plaintiff did not request documents on compact discs in 1996 in his initial FOIA requests.  However, if the FBI must now re-process his request, and the EOUSA must now undertake to process his request, there is no good reason not to provide the records on compact discs, other than to drive up Plaintiff's costs.  Plaintiff prefers the records in electronic format for other reasons as well.  While Plaintiff can arrange to review the records in prison, his counsel can review a second copy of them without having to photocopy 27 boxes of materials.

**B.**    **It's in the public interest that defendants in criminal cases receive fair trials.**

The long train of communications and negotiations, Plaintiff's unilateral "narrowing" of the scope of the materials he was requesting, the numerous appeals made by the Plaintiff, and his apparent failure to appeal several determinations, were all the result of the Plaintiff's inability to pay the $1600. demanded by Defendant to photocopy the records he requested.  While the Defendant has spent hours counting boxes and recalculating fees, if the Defendant had simply provided Plainff with the documents on compact discs, or waived the $1100-$1600 it was demanding at various times, it could have saved itself a great deal of time and expense.  While this may seem to be a small amount of money to fight over, as an indigent prisoner, Plaintiff has had no way to pay it.

Plaintiff is entitled to a waiver of all search and copying fees because the public has an interest in the administration of justice in this country. 5 U.S.C. § 552 (a)(4); Marschner v. Department of State, 470 F.Supp. 196, 201 (D.C.Conn. 1979), citing Cuneo v. Rumsfeld, 553 F.2d 1360, 1367 (D.C.Cir. 1977).  Successful FOIA litigants enhance the public interest by bringing the government into compliance with the law.  Cuneo, 553

F.2d at 1366.  A successful FOIA complainant has also rendered substantial service to both the government, by bringing it into compliance with the policy underlying the FOIA, and to the public at large, by securing for it the benefits assumed to flow from public disclosure of government information.  Years ago, Judge Bryant found that most successful FOIA actions result in the vindication of important congressional policies and confer important benefits on the public generally.  See Consumers Union v. Board of Governors of the Federal Reserve System, 410 F.Supp. 63 (D.D.C. 1976).  Additionally, Plaintiff's interest in the records sought was not commercial in nature. Marschner, 470 F.Supp at 201.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Partial Summary Judgment should be denied, and Plaintiff's Cross Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

/s/

_____

Paul Wolf
D.C. Bar #480285
P.O. Box 11244
Washington, D.C. 20008-1244
(202) 674-9653
paulwolf@icdc.com

## **Certificate of Service**

I hereby certify that on August 25, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Paul Wolf

_____

Paul Wolf

19

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

_____
                                        )
**William F. Kenney**                    )
                                        )
    **Plaintiff,**                       )
                                        )
        **v.**                          )      **Civil Action No. 07-1989 (PLF)**
                                        )
**U.S. Department of Justice**           )
                                        )
    **Defendant.**                      )
_____)

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS A GENUINE DISPUTE**

1.      Plaintiff disputes allegations that he has forged any signatures or misled or threatened any of the people who provided him with privacy waivers.  These are Plaintiff's witnesses.  Plaintiff contends that at least some of them were intimidated by the FBI, and contrary to the declaration of Karen Finnegan, FBI agents not only called them on the telephone, but in some cases, showed up at their homes.  Some were co-operating co-defendants, and may have good reasons to fear the FBI.

2.      The individuals making these allegations remain anonymous.  The DOJ's affiant, Karen Finnegan, does not state any basis for having personal knowledge of what occurred.  She does not even name the FBI agents who purportedly have personal knowledge.  For her allegations of misleading and intimidating witnesses, Plaintiff does not even know which of his witnesses are being referred to, making Ms. Finnegan's testimony a kind of "double blind" hearsay.

3.      Plaintiff's request of "investigative" records of the EOUSA, as he understood the term, was for records not publicly-filed in the docket of the case.  DOJ's interpretation of this term to mean "FBI records" is at odds with the fact that Plaintiff is requesting FBI records from the FBI.  It would make no sense for him to request the same records from both DOJ components.

Respectfully submitted,

/s/

_____
Paul Wolf
D.C. Bar #480285
P.O. Box 11244
Washington, D.C. 20008-1244
(202) 674-9653
paulwolf@icdc.com