UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WILLIAM KENNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-1989 (PLF) |
| ) | |
| UNITED STATES DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

OPINION

Plaintiff William Kenney brought this Freedom of Information Act ("FOIA") suit against defendant, the United States Department of Justice, to obtain records in the possession of two of its component agencies, the Executive Office for United States Attorneys ("EOUSA") and the Federal Bureau of Investigation ("FBI"). Defendant now seeks partial summary judgment with respect to the EOUSA's response to plaintiff's request.[1] Plaintiff has responded with a cross motion for partial summary judgment. After careful consideration of the parties' papers and the entire record in the case, the Court grants defendant's motion and denies plaintiff's motion.[2]

---

[1] The parties agreed to separate summary judgment briefing for the EOUSA and the FBI in a Joint Status Report submitted to the Court on May 30, 2008. Accordingly, this Opinion is limited to plaintiff's FOIA request to the EOUSA. The Court will consider all of the parties' arguments made with respect to plaintiff's FOIA requests to the FBI, including plaintiff's 2004 request, when it considers the partial summary judgment motion which was filed by the FBI on March 20, 2009 and plaintiff's opposition thereto, which is due on April 17, 2009.

[2] The Court considered the following papers: plaintiff's Complaint; defendant's Partial Motion for Summary Judgment ("Mot."); plaintiff's Opposition to Defendant Department of Justice's Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment ("Opp."); and defendant's Reply on its Motion for Partial Summary Judgment and

I. BACKGROUND

On June 20, 1996, plaintiff, who is currently serving a prison sentence imposed by the United States District Court for the District of New Hampshire for a criminal conviction in 1992, submitted a FOIA/Privacy Act ("PA") request to the EOUSA requesting records relating to the criminal case against him and his co-conspirators. See Mot., Statement of Material Facts Not in Genuine Dispute ("Def. Facts") ¶¶ 1- 3; see also United States v. Neal, 36 F.3d 1190 (1st Cir. 1994) (affirming Kenney's conviction).[3] The EOUSA forwarded the request to the United States Attorney's Office for the District of New Hampshire ("USAO DNH") asking it to conduct a search for responsive records. See Def. Facts ¶ 4. The USAO DNH searched the computer case tracking system for records responsive to plaintiff's request, using plaintiff's name as a search term. See id. It also conducted a search of paper records, specifically its indices of criminal and civil cases and the Federal Records Center's paper indices of criminal and civil cases. See id. ¶ 4. USAO DNH also had its staff search their own personal files for responsive records. See id. These searches uncovered the master criminal case file for plaintiff's criminal case, 27 boxes in total. See id. ¶¶ 4, 14.

After initially withholding the records, and then subsequently determining that the records were appropriate for processing based on a change in its treatment of Exemption (7)(A) of the FOIA, the EOUSA informed plaintiff by letter of May 5, 2000 that it had located nine boxes of potentially responsive nonpublic material and approximately 11,900 pages of public,

---

Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment ("Rep.").

[3] As provided for by Local Civil Rule 56.1, the Court will treat all facts identified by defendant in its Statement of Material Facts, and not disputed by plaintiff in his Opposition, as admitted.

court-filed potentially responsive documents.  See Def. Facts ¶¶ 6, 7.  Over the next few months, plaintiff submitted numerous PA waivers for the third parties about whom he had requested records, in order to allow the EOUSA to release the third parties' records.  See id. ¶ 8.  Between June 7, 2000 and March 29, 2004, plaintiff submitted death certificates for additional third parties (in lieu of PA waivers).  See id. ¶ 9.

By letter of February 10, 2004, the EOUSA informed plaintiff that it was rejecting the PA waiver that he had submitted for Richard J. Ferguson and for four other third parties.  See Def. Facts ¶ 10.  In a letter dated March 29, 2004, the EOUSA notified plaintiff that it would honor his FOIA/PA request to the extent that it sought information relating to himself and to third parties for whom he had submitted death certificates, but was rejecting all of the PA waivers.  See id. ¶ 11.  The EOUSA also advised plaintiff that "[b]ecause we have received numerous letters from you during the past two years altering your FOIA request and/or narrowing it, the scope of your request has become ambiguous to us.  Therefore, we request clarification for the type of records you request on yourself and the deceased individuals."  See id., Ex. AA at 2. By letter of April 20, 2004, plaintiff responded:  "I am now respectfully requesting all investigative records and information on myself and the deceased individuals."  See id. ¶ 12, Ex. CC (emphasis in original).  From that point onward, the EOUSA treated plaintiff's FOIA request as seeking the investigative records for himself and for the third parties for whom he had submitted death certificates.

Based upon plaintiff's reformulated request, the USAO DNH shipped eleven boxes of potentially responsive records to the EOUSA, including, among other things, all investigative records contained in the criminal case file.  See Mot., Declaration of Karen M.

3

Finnegan ("First Finnegan Decl.") ¶ 46.  By letter of June 8, 2004, the EOUSA informed plaintiff that it had conducted a search of the records in its possession (the eleven boxes from the USAO DNH) pursuant to his April 20, 2004 letter and located approximately three boxes (or 6,000 pages) of responsive investigative records, and about 120 pages of responsive publically filed records.  See Def. Facts ¶¶ 13-14; First Finnegan Decl. ¶ 46.  The EOUSA further informed plaintiff that it would refer these records to the FBI for processing before release to plaintiff.  See Def. Facts ¶ 13.  Plaintiff responded by letter of June 23, 2004, declining to pursue production of the publically available records, but stating that he did "want to pursue the investigative records."  See id. ¶ 15, Ex. FF.

By letter of August 9, 2004, the EOUSA informed plaintiff that it had "gathered all investigative records and referred them to the FBI for review and processing."  See Def. Facts ¶ 16; Mot., Ex. GG at 1.  The letter also explained that "[t]his is the final action this office will take concerning your request," and informed plaintiff of his right of appeal.  See Mot., Ex. GG at 2.  The EOUSA referred all of the approximately 6,000 pages of investigative records potentially responsive to plaintiff's final formulation of his FOIA request to the FBI for processing.  See Def. Facts ¶ 17.  Both defendant and plaintiff now move for summary judgment on the adequacy of the EOUSA's response to plaintiff's FOIA request.

## II.  STANDARD OF REVIEW

The Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Hertzberg v. Veneman, 273 F.Supp.2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. Central Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III.  DISCUSSION

Defendant moves for partial summary judgment on the ground that the EOUSA conducted an adequate search for records and properly referred potentially responsive records to the FBI for processing.  Plaintiff does not contest the adequacy of the EOUSA's search for

documents. Instead he challenges the agency's failure to produce those records, arguing that the EOUSA impermissibly narrowed the scope of his request and that it was inappropriate for the EOUSA to forward the records to the FBI for processing.

*A. The EOUSA Did Not Inappropriately Narrow Plaintiff's FOIA Request*

The FOIA requires that a party making a request "reasonably describe[]" the records sought. 5 U.S.C. § 552(a)(3)(A). Here, after extensive correspondence over a number of years between the EOUSA and plaintiff, the EOUSA determined that "the scope of [plaintiff's] request has become ambiguous to [it]," and requested that plaintiff clarify his request. See Def. Facts, Ex. AA at 2. Such a request for clarification is appropriate where a request is not specific enough to allow "a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." Dale v. I.R.S., 238 F. Supp. 2d 99, 104 (D.D.C. 2002) (citations omitted). Plaintiff did not challenge the agency's conclusion that the request had become ambiguous, and instead clarified that "I am now respectfully requesting all investigative records and information on myself and the deceased individuals." See Def. Facts ¶ 12, Ex. CC (emphasis in original). From that point on, the EOUSA limited its search and production to the investigative records relating to plaintiff and the deceased individuals.

The EOUSA explains that "in accordance with [its] internal practices," it interpreted plaintiff's clarification requesting investigative records to include all "records created by federal state and local investigative law enforcement agencies. This is how the EOUSA routinely interprets requests for investigative records." See Rep., Second Declaration of Karen

6

M. Finnegan ("Second Finnegan Decl.") ¶ 8. The EOUSA's interpretation of "investigative records" appears to the Court to have been made in good faith and satisfies the agency's obligations under the FOIA. See Isasi v. Jones, 594 F. Supp. 2d 1, 4-5 (D.D.C. 2009) ("[t]he agency must show that it made a 'good faith effort to conduct a search for the requested records'") (citing Oglesby v. United States Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

   Plaintiff's challenge to the EOUSA's interpretation of the term "investigative records" appears to be little more than the expression of his wish that he had not narrowed his request so substantially. For example, plaintiff states that his "request of 'investigative records' of the EOUSA, as he understood the term, was for records not pubicly-filed [sic] in the docket of the case." Opp., Plaintiff's Statement of Material Facts as to Which There is a Genuine Dispute ¶ 3. This interpretation does not make sense, however, in light of the common sense meaning of the word "investigative." In contrast, the EOUSA's explanation for its treatment of the term is reasonable:

> The U.S. Attorney's Offices do not investigate violations of criminal and civil laws, but instead, rely on the various federal, state and local investigative agencies to uncover violations of U.S. laws for criminal prosecution and/or for civil action. Accordingly, when Plaintiff advised that he was interested in "all investigative records," EOUSA's fair reading of that reformulated request was that he was seeking access only to records created by the FBI . . . and the state and local law enforcement agencies that had a role in investigating him.

Second Finnegan Decl. ¶ 8. Furthermore, plaintiff provides no legal support for his position other than that "these kinds of records [the 27 original boxes] are discoverable in a criminal case," and they "are also, more or less, the same categories of records itemized in Plaintiff's initial FOIA request to EOUSA." Opp. at 7. Plaintiff cannot allege that the agency failed to

produce responsive records, when the records he now identifies fall outside the scope of his appropriately narrowed request. Cf. Lee v. United States Dep't of Justice, 235 F.R.D. 274, 285 (W.D. Pa. 2006) (EOUSA may ask FOIA requestor to narrow the scope of the request where request is "overbroad").

In addition, when plaintiff clarified his FOIA request for the EOUSA, he limited the records he was requesting to those relating to "myself and the deceased individuals." Def. Facts ¶ 12, Ex. CC. The EOUSA appropriately treated this clarification as excluding records, which might otherwise be responsive, that related to the still living individuals who had submitted PA waivers. Therefore, plaintiff's assertions as to the EOUSA's rejection of the PA waivers for Mr. Ferguson and others who are not deceased are immaterial to the summary judgment briefing because records relating to those individuals fell outside the scope of his narrowed request.

B. *The EOUSA Properly Forwarded the Responsive Records to the FBI for Processing.*

Plaintiff challenges the EOUSA's decision to forward potentially responsive documents to the FBI for review and processing prior to release. In support of its decision to do so, the EOUSA relies on Department of Justice regulations which provide:

> When a component receives a request for a record in its possession, it shall determine whether another component, or another agency of the Federal Government, is better able to determine whether the record is exempt from disclosure under the FOIA and, if so, whether it should be disclosed as a matter of administrative discretion. If the receiving component determines that it is not best able to process the record, then it shall . . . [r]efer the responsibility for responding to the request regarding that record to the component best able to determine whether to disclose it, or to another agency that originated the record. . . . Ordinarily, the

>     component or agency that originated a record will be presumed to
>     be best able to determine whether to disclose it.

28 C.F.R. § 16.4(c)(2). In her first declaration, Karen Finnegan explains that after the EOUSA identified the responsive investigative records, it determined that they had all originated with the FBI. See First Finnegan Decl. ¶ 51. Based on 28 C.F.R. § 16.4(c)(2), the EOUSA decided that because the FBI had originated the records, it would be best able to determine whether they must be disclosed under the FOIA. Accordingly, the EOUSA referred all of the investigative records to the FBI for review and processing. See First Finnegan Decl. ¶ 51. The declaration by Ms. Finnegan is accorded "a presumption of good faith," and plaintiff has given the Court no reason to doubt Ms. Finnegan's explanation, or the decision to forward the documents to the FBI for processing. See Voinche v. FBI, 412 F. Supp. 2d at 64-65 (quoting SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). See also Keys v. Dep't of Homeland Sec., 570 F. Supp. 2d 59, 66-67 (D.D.C. 2008), *remanded on other grounds*, 2008 U.S. App. LEXIS 23351 at *1 ("an agency may adopt procedures by which documents in the agency's possession, but which did not originate with the agency, may be referred to the originating agency for processing") (citing McGehee v. C.I.A., 697 F.2d 1095, 1110 (D.C. Cir. 1983)).

In addition, plaintiff did not administratively appeal the EOUSA's referral of responsive records to the FBI for processing. See Def Facts ¶ 16. For FOIA requesters, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting Oglesby v. United States Dep't of the Army, 920 F.2d at 61). It is appropriate for

the Court to consider only those aspects of plaintiff's request which he properly exhausted.  See Lair v. Dept of Treasury, Civil Action No. 03-0827, 2005 WL 645228 at *3-4 (D.D.C. March 21, 2005) (only the issues raised by plaintiff in administrative appeals of the agency's response to his FOIA request were properly before the Court).  Plaintiff's failure to administratively exhaust with respect to the referral of his records to the FBI would bar his claim, even if it were meritorious.  The Court finds that the EOUSA has satisfied its obligations with respect to plaintiff's FOIA request.[4]

### C. Plaintiff Does Not Have a Right to Relief Under the Administrative Procedure Act

Plaintiff asserts that he is seeking material that should have been produced and made available to him at his criminal trial under Brady v. Maryland, 373 U.S. 83 (1963).  Because this alleged failure to disclose exculpatory evidence implicates his constitutional rights, plaintiff argues that he has a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, et seq., which provides the Court with jurisdiction to review agency action "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).  But the APA provides for judicial review of final agency action only where "there is no other adequate remedy in a court."  5 U.S.C. § 704.  Plaintiff's claim that the EOUSA improperly withheld agency records that were responsive to his FOIA request is, of course, reviewable under the FOIA itself. See 5 U.S.C. § 552(a)(4)(B).  Accordingly, plaintiff does not also have access to judicial review under the APA.  See Physicians Comm. for Responsible Med. v. Dep't of Health and Human

---

[4] Because the Court finds that defendant EOUSA has not violated the FOIA, it also finds that plaintiff has no basis for obtaining a declaratory judgment against the EOUSA pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (Count III of plaintiff's complaint).

Servs., 480 F. Supp. 2d 119, 121 n.2 (D.D.C. 2007) (no APA review exists for denial of FOIA fee waiver request, because remedy is provided for under the FOIA); Thomas v. Federal Aviation Admin., Civil Action No. 05-2391, 2007 WL 219988 at *3 (D.D.C. January 25, 2007) (no APA review is available when plaintiff has a remedy under the FOIA); Edmonds Inst. v. United States Dep't of Interior, 383 F. Supp. 2d 105, 111 (D.D.C. 2005) ("review under the APA is unavailable when [the FOIA] provides an adequate remedy").

## IV CONCLUSION

For the forgoing reasons, the Court will grant defendant's motion for partial summary judgment as to all claims against the EOUSA. The Court will deny plaintiff's cross-motion for partial summary judgment. An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 30, 2009